**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 15-1** |
| | : | |
| | : | |
| **DMITRIJ HARDER** | : | |
| | : | |

## O R D E R

The grand jury has charged Defendant Dmitrij Harder with conspiracy to violate the Foreign Corrupt Practices and Travel Acts, substantive violations of the FCPA and Travel Act, conspiracy to commit international money laundering, substantive violations of the international money laundering statute, and aiding and abetting.  (Doc. No. 1, Cts. 1-14); 18 U.S.C. § 371; 15 U.S.C. § 78dd-2; 18 U.S.C. § 1952; 18 U.S.C. §§ 1956(h), (a)(2)(A); 18 U.S.C. § 2.

On October 16, 2015, Defendant filed separate Motions to Dismiss Counts One through Eleven, and Twelve through Fourteen, of the original Indictment.  (Doc. Nos. 39, 40); Fed. R. Crim. P. 12(b)(3).  On December 15, 2015, the grand jury returned a Superseding Indictment.  (Doc. No. 62.)   In its response to Defendant's two Motions, the Government addressed Defendant's arguments respecting the original Indictment as though they were directed at the Superseding Indictment.  (Doc. Nos. 71, 72).  I will similarly construe Defendants' Motions to Dismiss the Indictment as Motions to Dismiss the Superseding Indictment.   I will deny both Motions.  (Doc. Nos. 39, 40.)

### I.      Background

The Government alleges the following pertinent facts in the Superseding Indictment. (Doc. No. 62.)

Defendant—a Russian national, naturalized German citizen, and United States permanent

resident—is the president and owner of Chestnut Consulting Group, Inc. and Chestnut Consulting Group, Co., which are incorporated in Pennsylvania and Delaware, respectively.  (Id. ¶ 1.)

The European Bank for Reconstruction and Development is headquartered in London, England providing debt and equity financing for development projects throughout Europe.  (Id. ¶ 3.)  In June 1991, President George H.W. Bush signed Executive Order No. 12,766 designating EBRD a "public international organization."  (Id.); see Exec. Order No. 12,766, 56 Fed. Reg. 28463 (June 18, 1991). As alleged, EBRD employed "Official"—a Russian and United Kingdom national—as a senior banker in EBRD's Natural Resources Group.  (Id. ¶ 4.)   Official was responsible for reviewing project-financing applications.  (Id.)

In August 2007, Company A—a Russian independent oil and gas concern—asked Defendant for assistance in raising funds for a Russian natural gas development project.  (Id. ¶ 11.)   In September 2007, Defendant emailed Official respecting Company A's interest in obtaining EBRD financing.  (Id. ¶ 12.)  Company A then entered into several financial services agreements with "Chestnut Inc." (that Defendant signed), agreeing to pay Chestnut a "success fee" comprising a certain percentage of EBRD funds it might receive.  (Id. ¶¶ 13, 15.)

In April 2008, Official recommended EBRD's approval of Company A's application for financing.  (Id. ¶ 14.)   Accordingly, EBRD approved and disbursed (via a related holding company) an $85 million equity investment to Company A, which, in turn, paid Chestnut a $1.7 million success fee.  (Id. ¶¶ 14, 17.)  From July to October 2007, Defendant sent three wire transfers for "consulting" and related services totaling some $753,300 from "Chestnut Inc.'s" Germany-based bank account to a bank account in the Channel Islands belonging to Official's Sister, also a Russian and U.K. national.  (Id. ¶¶ 5, 18.)  As alleged, these payments were bribes,

2

intended to influence Official respecting EBRD's financing applications.  (Id. ¶ 23.)

After receiving an additional €90 million EBRD senior loan, Company A entered into a new agreement with Chestnut (which Defendant again signed), providing that the success fee was now payable on the original equity investment plus the senior loan.  (Id. ¶ 20.)  In June 2009, Company A paid Chestnut a success fee of approximately $2.9 million.  (Id. ¶ 21.)  In July 2009, Defendant once again wired approximately $310,121—and again alleged to be an illegal payment—from Chestnut's Pennsylvania-based bank account to the Channel Islands bank account of Official's Sister.  (Id. ¶¶ 22, 23.)

The Government further alleges that sometime in 2007, Company B—an oil and gas concern incorporated in the United Kingdom and operating in the Russian Federation— approached EBRD for financing, but ultimately obtained it from another institution.  (Id. ¶ 24.) In May 2009, when Company B again sought EBRD financing, Official was assigned to review its application.  (Id. ¶ 25.)  Company B and Chestnut entered into an Agreement, with terms similar to those in Chestnut's Agreement with Company A.  (Id. ¶ 26.)  In connection with its Agreement, Company B advanced Chestnut $100,000 to be credited to any future success fees. (Id. ¶ 28.)

In July 2009, on Official's recommendation, EBRD approved Company B's application for a $40 million equity investment and a $60 million convertible loan.  (Id. ¶ 27.)  In October 2009, Company B paid Chestnut a success fee of approximately $4.9 million (in addition to the previous $100,000) in connection with the EBRD financing approval—a total of some $5 million in success fees.  (Id. ¶ 28.)  In November 2009, Defendant once again wired approximately $2,478,580—again, alleged to be a corrupt payment—to Official's Sister.  (Id. ¶ 29.)

In sum, the Government alleges that from 2007 to 2009, Defendant—operating through

the Chestnut entities—conspired to pay and paid approximately $3.5 million in bribes to influence Official's actions at EBRD. (Id. ¶ 2); 18 U.S.C. § 371; 15 U.S.C. § 78dd-2; (Doc. No. 62, Cts. 1-6). As alleged, the payments were intended to benefit Defendant and his clients (Companies A and B) and to influence Official to direct business to Defendant and Chestnut, all in violation of the FCPA. (Id., Cts. 2-6). The Government additionally alleges that Defendant conspired with Official's Sister to conceal and facilitate the bribes, thus violating the Travel Act. (Id. ¶ 2, Cts, 1, 7-11); 18 U.S.C. §§ 371, 1952. Finally, the Government alleges that Defendant conspired to and committed international money laundering by wiring corrupt payments to Europe from the United States with the intent to promote the underlying FCPA scheme. (Id., Cts. 12-14); 18 U.S.C. § 1956(h), (a)(2)(A).

## II.     Legal Standard

In deciding a motion to dismiss, I must accept factual allegations and disregard legal conclusions to determine whether the alleged facts constitute a crime. United States v. Zauber, 857 F.2d 137, 144 (3d Cir. 1988). In assessing an indictment's sufficiency, I must determine whether it: (1) contains the elements of the charged offense, (2) apprises the defendant of the charges against him, and (3) allows the defendant to plead an acquittal or conviction. United States v. Vitillo, 490 F.3d 314, 321 (3d Cir. 2007). Generally, an indictment satisfies these requirements if it "informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." United States v. Huet, 665 F.3d 588, 595 (3d Cir. 2012); see also Fed. R. Crim. P. 7(c)(1) (an indictment need only be a "plain, concise, and definite written statement of the essential facts constituting the offense charged"). At this stage, I must evaluate only the sufficiency of the Government's allegations. United States v. DeLaurentis, 230 F.3d 659, 660

4

(3d Cir. 2000).  Finally, I must dismiss counts based on a statutory misinterpretation.  <u>See</u> <u>United</u> <u>States v. Enmons</u>, 410 U.S. 396 (1973) (dismissing indictment when statute does not proscribe the conduct charged).

### III.    Argument

Defendant first asks me to dismiss the substantive FCPA Counts because he contends that the Government fails to plead the elements of an FCPA violation.  (Doc. No. 40 at 4-12, Cts. 2-6.)  He next challenges the FCPA's constitutionality both facially and as-applied to him.  (<u>Id.</u> at 12-28.)   Third, he contends that the Indictment fails to include legally adequate Travel Act violations.  (<u>Id.</u> at 29-33, Cts. 7-11.)  Defendant further argues that if I dismiss the underlying FCPA and Travel Act Counts, I must also dismiss the Conspiracy Count.  (<u>Id.</u>, Ct. 1).  Finally, Defendant asks me to dismiss the International Money Laundering Counts because they improperly merge with the substantive FCPA violations.  (Doc. No. 3, Cts. 12-14.)  I will deny both Defendant's Motions in their entirety.

### 1.   The Substantive FCPA Counts

Defendant argues that the Government failed to plead that: 1) he corruptly paid a "foreign official" within the FCPA's meaning; and 2) he had the requisite mens rea when paying Official's Sister.  Defendant further argues that the Indictment impermissibly substitutes "public international organization" for the term "foreign government or instrumentality thereof."  I do not agree. The Indictment is sufficient because it includes the requisite elements.  Fed. R. Civ. P. 7(c)(1); <u>United States v. Gillette</u>, 738 F.3d 63, 74 (3d Cir. 2013) ("[A]n indictment is enough to call for a trial of the charge on the merits so long as it is facially sufficient.") (citations and quotations omitted).

To make out an FCPA violation, the Government must allege that a "domestic concern"

corruptly offered, promised to pay, or paid anything of value to a foreign official (or through a third party) to induce him to use his influence to act unlawfully, *inter alia*, respecting a "foreign government or instrumentality thereof."   15 U.S.C. § 78dd-2(a)(1)-(3).   A "foreign official" includes any officer of a public international organization.   Id. § 78dd-2(h)(2)(A).   The FCPA includes the following mens rea requirement: the payor must know that "all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official."   Id. § 78dd-2(a)(3).   The FCPA thus makes it a crime to bribe a third party if the payor knows that foreign official will ultimately receive the payment and will thus be induced to act unlawfully.   See id. § 78dd-2(a)(3), (h)(3)(a).

Here, Defendant, a United States permanent resident, is plainly a domestic concern.   Id. § 78dd-2(h)(1) (defining a "domestic concern" as, *inter alia*, a U.S. resident).   Moreover, Official (the ultimate bribe recipient) was an employee and/or officer of EBRD—a properly designated public international organization (as I discuss below).   Additionally, the Government has charged, as it must, that Defendant paid Official Sister knowing that those bribes would be given, directly or eventually, to Official to induce him to violate the law.   See id. § 78dd-2(a)(3); (Doc. No. 62 at ¶ 42 ("Dmitrij Harder, being a domestic concern . . . did willfully use . . . any instrumentality of interstate commerce, corruptly . . . while knowing that all or a portion of such money . . . had been offered . . . for the purposes of influencing acts and decisions of such foreign official in his official capacity . . . .") (emphasis added). The Government moreover pled that "Official's Sister received these payments for the benefit of EBRD Official, to corruptly influence the foreign official's actions."   (Doc. No. 62 at ¶ 23.)   Finally, as Defendant acknowledges, the Government alleges that Defendant made corrupt payments to: 1) "influenc[e Official's] acts and decisions," 2) "induc[e] [Official] to do and omit acts in violation of [his]

lawful duty"; 3) "secur[e] an improper advantage; and 4) "induc[e] [Official] to use his influence and authority with a public international organization to affect and influence acts and decisions of such organization." (Doc. No. 40 at 11; Doc. No. 62 ¶ 42.)

These allegations certainly make out that Defendant acted knowingly with respect to both Official and his Sister. See, e.g., SEC v. Straub, 921 F. Supp. 2d 244, 265 (S.D.N.Y. 2013) (FCPA violation is complete even when payor does not know the ultimate recipient's identity); SEC v. Jackson, 908 F. Supp. 2d 834, 850 (S.D. Tex. 2012) ("The Court seriously doubts that Congress intended to hold an individual liable under 15 U.S.C. § 78dd–1(a)(3)(A) only if he took great care to know exactly whom his agent would be bribing and what precise steps that official would be taking."). The FCPA Counts thus sufficiently "apprise[] the defendant of what he must be prepared to meet." United States v. John-Baptiste, 747 F.3d 186, 195 (3d Cir. 2014); Vitillo, 490 F.3d at 321.

I also reject Defendant's argument that the Government impermissibly substituted in the Superseding Indictment the term "public international organization" for "foreign government or instrumentality thereof." (Doc. No. 40 at 10.) Although the FCPA explicitly proscribes conduct aimed at inducing a foreign official to misuse his position in connection with "a foreign government or instrumentality thereof," it also contemplates that a "foreign official" includes "any officer or employee of . . . a public international organization." Id. § 78dd-2(a)(1), (3), (h)(2)(A). Plainly, the FCPA thus proscribes unlawful conduct in connection with a public international organization—itself an association of foreign governments. The construction Defendant urges would effectively read § 78dd-2(h)(2)(A) out of the statute, and so make it impossible to prosecute any public international organization employee who unlawfully used his position respecting his employer—an absurd result. See United States v. Schneider, 14 F.3d 876,

7

880 (3d Cir. 1994) ("It is the obligation of the court to construe a statute to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose.").  The Government's use of "public international organization" in the Superseding Indictment is thus permissible.

In any event, whether EBRD falls within the FCPA's ambit is necessarily a "fact-bound question[]" properly decided by a jury.  See United States v. Esquenazi, 752 F.3d 912, 925 (11th Cir.) (in case of first impression, noting that whether an entity constitutes an "instrumentality" is a "fact-bound question[]" and providing relevant factors to the jury's inquiry), cert. denied, 135 S. Ct. 293 (2014); United States v. Duperval, 777 F.3d 1324, 1333 (11th Cir. 2015) ("fact-finder should consider the factors" enumerated in Esquenazi to determine whether entity constitutes instrumentality), cert. denied, 136 S. Ct. 859 (2016).  Because the Government has alleged sufficient facts for a jury determination as to this issue, it may proceed to trial.  See Huet, 665 F.3d at 595.

In sum, because the Government has adequately charged the substantive FCPA counts, Defendant is not entitled to their dismissal.

### 2.   The FCPA's Inclusion of EBRD

Defendant also asks me to dismiss the substantive FCPA counts because § 78dd-2(h)(2)—the Act's provision defining a public international organization—is unconstitutional. (Doc. No. 40 at 12-28.) I do not agree.

#### a.   Non-Delegation Challenge

Defendant first argues that the President, using improperly delegated legislative authority, impermissibly expanded the FCPA's use of "foreign official" to include "public international organizations."  In response, the Government sets out a lengthy legislative history—namely, the

enactment of: 1) the International Organization Immunities Act, 2) the European Bank for Reconstruction and Development Act, 3) the Omnibus Trade and Competiveness Act, and 4) the International Anti-Bribery and Fair Competition Act.  (Doc. No. 72 at 4-11, 25-31); 22 U.S.C. § 288; 22 U.S.C. § 290l; Pub. L. No. 100-418, § 5003(d), 102 Stat. 1107 (1988); Pub. L. No. 105-366, 112 Stat. 3302 (1998).  The Government argues that this history demonstrates that there was no such delegation, and that Congress independently designated EBRD a public international organization.

Although the Government's narrative is convincing, I will nonetheless assume, *arguendo*, that Congress delegated its authority to the President.  That delegation is constitutional.  There is no blanket prohibition against legislative delegation of authority in the criminal context.  See Loving v. United States, 517 U.S. 748, 768 (1996) ("The exercise of a delegated authority to define crimes may be sufficient in certain circumstances to supply the notice to defendants the Constitution requires.").  Rather, such delegation is unconstitutional only in the rare instance when Congress fails to provide some "intelligible principle" by which the Executive must exercise its delegated authority.  See Mistretta v. United States, 488 U.S. 361, 371-72 (1989); United States v. Amirnazmi, 645 F.3d 564, 575 (3d Cir. 2011) ("The [Supreme] Court has expressly refrained from deciding whether Congress must provide stricter guidance than a mere 'intelligible principle' when authorizing the Executive 'to promulgate regulations that contemplate criminal sanctions.'" (citing Touby v. United States, 500 U.S. 160 (1991)).  The Third Circuit has found "only two occasions [where] the [Supreme] Court [has] invalidated legislation based on the nondelegation doctrine, and both occurred in 1935."  United States v. Cooper, 750 F.3d 263, 268 (3d Cir. 2014).

This case does not present the third such occasion.  Congress has complied with each of the Supreme Court's delegation requirements.  See Mistretta, 488 U.S. at 372-73 (A delegation "is constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority").  First, it has explicitly stated the FCPA's goal: "[to ]improve the competitiveness of American business and promote foreign commerce."  Pub. L. 105-366, 112 Stat. 3302 (1998).  Courts have upheld far less precise policy statements.  See Whitman v. American Trucking Associations, 531 US 457, 474 (2001) ("In the history of the Court we have found the requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'"); Cooper, 750 F.3d at 272 (policy statement directing the Attorney General to "protect children and the public at large from sex offenders" in determining the applicability of the Sex Offender Registration and Notification Act for pre-act Offenders); United States v. Berberena, 694 F.3d 514, 523 (3d Cir. 2012) ("The Supreme Court has upheld, . . . without deviation, Congress' ability to delegate power under broad standards.") (citations and quotations omitted).

Second, Congress permissibly conferred the designation authority on the President.  15 U.S.C. § 78dd-2; Amirnazmi, 645 F.3d at 575 (upholding congressional delegation to Executive).  As Defendant acknowledges, such a delegation plainly suffices to identify the implementing agency.  (Doc. No. 40 at 21.)  The first two prongs of the intelligibility test are thus met.

Finally, under the FCPA provision at issue here, Congress narrowly circumscribed the President's delegated authority to define public international organizations pursuant to Executive

Order. 15 U.S.C. § 78dd-2(h)(2)(B)(i) ("'[P]ublic international organization' means [*inter alia*] an organization that is designated by Executive Order pursuant to section 288 of title 22 [the International Organization Immunities Act].").  The IOIA itself requires Congress to act before the President can exercise his discretion in this context.  <u>See</u> 22 U.S.C. § 288 ("'[I]nternational organization' means a public international organization in which the United States participates pursuant to any treaty or under the authority of any Act of Congress.").  Such boundaries—necessarily requiring antecedent congressional action through the treaty ratification or equivalent process—are more than sufficient to pass constitutional muster.  <u>See, e.g.</u>, <u>Cooper</u>, 750 F.3d at 268 (upholding broad delegation to Attorney General to determine SORNA registration requirements); <u>Amirnazmi</u>, 645 F.3d at 577 (upholding delegation to the Executive to declare a national emergency and expand the scope of criminal liability in the trade context without an antecedent authorizing congressional action).

In these circumstances, Congress's delegation is constitutional because it materially constrains the President's power to define public international organizations.  <u>Touby</u>, 500 U.S. at 166.  Finally, the President acted permissibly within these boundaries when designating EBRD a public international organization.  As the applicable Executive Order confirms, the President invoked his authority under the IOIA and acted consistent with it when recognizing EBRD as a public international organization.  <u>See</u> 56 FR 28463 (June 18, 1991), Exec. Order No. 12,766 ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Organizations Immunities Act. . .[and] the European Bank for Reconstruction and Development Act, . . . it is hereby ordered . . . that the [EBRD] . . . is hereby designated a public international organization . . . .").  Given this explicit language, I must reject Defendant's suggestion that the EBRD comes within the FCPA's ambit by virtue of

some provision other than subsection (h)(2)(B)(i). 15 U.S.C. § 78dd-2(h)(2)(B)(i); (Doc. No. 40 at 23-24).   As the Executive Order makes plain, the President's Order is consistent with 22 U.S.C. § 288; the operative provision at issue in this case thus must be subsection (h)(2)(B)(i). Id.   As I have discussed, that provision plainly is not an impermissible delegation of authority. Defendant has thus not shown that § 78dd-2(h)(2) is unconstitutional as applied to him.

Because EBRD is constitutionally included in the FCPA's ambit, Defendant is not entitled to dismissal of the substantive FCPA Counts.

### b.  Vagueness Challenge

A statute is void for vagueness only if it: (1) fails to provide a person of ordinary intelligence a reasonable opportunity to understand what conduct it proscribes; or (2) authorizes or encourages arbitrary or discriminatory enforcement.   Amirnazmi, 645 F.3d at 588; see also United States v. Kay, 513 F.3d 432, 441 (5th Cir. 2007) ("The FCPA delineates seven standards that may lead to a conviction. All are phrased in terms that are reasonably clear so as to allow the common interpreter to understand their meaning.").   Additionally, an undefined word or phrase does not render a statute void when a court could ascertain the term's meaning by reading it in context.   See Boos v. Barry, 485 U.S. 312, 332 (1988).   Finally, a vagueness challenge is particularly difficult to sustain when, as here, the statute includes a mens rea requirement.   See Gonzales v. Carhart, 550 U.S. 124, 149 (2007) ("[S]cienter requirements alleviate vagueness concerns."); Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982) ("[S]cienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

"Public international organization" as used in the FCPA is not vague.   As I have discussed, the Act clearly prohibits corrupt conduct directed at employees of a "public

international organization"—which is, in turn, explicitly defined pursuant to IOIA and Executive Order.  15 U.S.C. § 78dd-2(h)(2)(B)(i); 22 U.S.C. § 288; Exec. Order No. 12,766, 56 Fed. Reg. 28463 (June 18, 1991).  A person of ordinary intelligence would thus have no difficulty identifying EBRD as one among several enumerated public international organizations falling within the FCPA's ambit.  Indeed, Defendant acknowledges that such a list exists, and that "researching all Executive orders issued by the President pursuant to either 22 U.S.C. § 288 or the FCPA" would reveal that EBRD is a public international organization.  (Doc. No. 40 at 23, 28.)  Defendant's suggestion that he could not have known that the EBRD qualified as a public international organization is thus untenable.  San Filippo v. Bongiovanni, 961 F.2d 1125, 1136 (3d Cir. 1992) ("Simply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague." (citing United States v. Powell, 423 U.S. 87, 94 (1975))).

Moreover, the FCPA includes a knowledge requirement, thus alleviating any concern that Defendant might be punished for conduct that he did not know was proscribed.  See United States v. Amirnazmi, 2009 WL 2603180, at *2 (E.D. Pa. Aug. 21, 2009) ("[W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of the law.").  Plainly, an ordinary person—and especially a sophisticated businessman like Defendant—would understand that the EBRD is a public international organization both literally and legally, and that bribing an employee of such an organization could well be criminal.  See Kay, 513 F.3d at 442 ("A man of common intelligence would have understood that . . . bribing foreign officials, was treading close to a reasonably-defined line of illegality.").  I will thus reject Defendant's vagueness challenge.

In sum, the inclusion of EBRD within the FCPA's ambit is not unconstitutional, either facially or as-applied to Defendant.  Accordingly, I will permit the Government to proceed on its substantive FCPA Counts.

### 3.  Travel Act Counts

Defendant contends that: 1) the Government has failed to allege the predicate "unlawful activity" necessary to state a Travel Act violation; and 2) the Travel Act does not apply extraterritorially.  (Id. at 29-33); 18 U.S.C. § 1952(a)(3) (proscribing, *inter alia*, use of a facility in interstate or foreign commerce with the intent to promote "unlawful activity"); 18 Pa. Cons. Stat. Ann. § 4108.  I do not agree.

Defendant first argues that the Indictment does not state an offense under the Pennsylvania commercial bribery statute, the underlying Travel Act predicate offense.  18 Pa. Cons. Stat. Ann. § 4108(a), (c).  Under the Pennsylvania statute, the prosecutor must allege that the defendant bribed or offered to bribe an employee to influence that employee's conduct respecting his employer's affairs.  See id.  The reach of the Pennsylvania's anti-bribery statute is quite broad: the prosecutor need not allege or prove that the employee actually accepted the bribe.  See id. (employee violates statute when he "solicits, accepts, or agrees to accept any benefit"); United States v. Parise (Parise I), 159 F.3d 790, 799 (3d Cir. 1998); Parise v. United States (Parise II), No. CIV. A. 00-1087, 2000 WL 876894, at *3 (E.D. Pa. June 20, 2000) ("[Section] 4108(c) does not require that the payment must have been accepted.").  Moreover, in circumstances where the employee-offeree has himself not violated the statute, charges may still "be brought against the person who offered the bribe based on the theory that if the bribe had been accepted, the [offeree] would have violated [the statute]."  Parise II, 2000 WL 876894, at *4 n.6.

Defendant is thus mistaken that the Travel Act Counts are defective because they do not make out that Official's Sister (who was not an EBRD employee) violated the Pennsylvania statute. (Doc. No. 40 at 30-31 ("Harder can be convicted of bribery under Pennsylvania law *only if* the EBRD Official's Sister could be convicted under the Pennsylvania law.").) Under Defendant's exceedingly narrow reading of the statute, a bribe offerer could insulate himself from liability by using a non-employee middle man to convey the payment. Such a construction would certainly work against the statute's broad reach and purpose. See Parise I, 159 F.3d at 799. It is also at odds with Parise II, which contemplates charges against an offeror regardless of whether the Government can proceed against the employee-offeree. Parise II, 2000 WL 876894, at *4 n.6. That Official's Sister acted as an intermediary between Defendant and Official thus does not warrant dismissal.

Defendant also argues that the alleged unlawful conduct is outside § 4108's territorial limitations. (Doc. No. 40 at 31 ("[T]he act of accepting payment of a bribe outside of Pennsylvania does not constitute an offense under the solicitation provision (§4108(c))."); 18 Pa. Cons. Stat. § 4108; 18 Pa. Cons. Stat. § 102(a) (territorial limitations). Again, I do not agree. The Government need only allege the elements of a § 4108 offense, namely some "relevant conduct" territorially connecting Defendant and his bribery scheme to the Commonwealth. Compare United States v. Ali, 2005 WL 1993841, at *5 (E.D. Pa. Aug. 16, 2005) ("[S]ufficient jurisdictional nexus" existed for § 4108 conviction where trial evidence established, *inter alia*, the "agreement resulting in the kickbacks was reached in Pennsylvania") aff'd, 493 F.3d 387 (3d Cir. 2007), with Parise II, 2000 WL 876894, at *3 (no territorial nexus where "all of the relevant conduct of the agents"—including agreement, offer, and acceptance—occurred outside the Commonwealth). The Government need not allege that Official's Sister or Official traveled to

Pennsylvania or even that they are in any way connected to the Commonwealth.  (Doc. No. 40 at 32.)   Rather, it suffices for the Government to allege, as it has here, that Defendant—a Pennsylvania resident, operating through and on behalf of a Pennsylvania corporation, and at times, using a Pennsylvania bank account—violated the Pennsylvania commercial bribery statute.  Cf. United States v. Gordon, 641 F.2d 1281, 1284 (9th Cir. 1981) ("The cases that do discuss [the Travel Act] make it clear that the statutory language embodies all of the essential elements and that reference to state law is necessary only to identify the type of unlawful activity involved.") (emphasis added); United States v. Giampa, 1992 WL 322028, at *5 (S.D.N.Y. Oct. 29, 1992) ("[T]he indictment must simply allege a predicate act which would violate state law, and then the Government must prove at trial that such activity was unlawful under state law.").

In sum, the Government has adequately stated a predicate offense.

I also reject Defendant's similar argument that the substantive Travel Act Counts impermissibly criminalize extraterritorial conduct.  (Doc. No. 40 at 33-34); see Kiobel v. Royal Dutch Petroleum Co., 133 S. Ct. 1659, 1664 (2013) ("'[W]hen a statute gives no clear indication of an extraterritorial application, it has none.'"); Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 263 (2010).   Defendant's reliance on the presumption against extraterritoriality is misplaced. The presumption "should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the government's jurisdiction." United States v. Bowman, 260 U.S. 94, 98 (1922) (emphasis added); see United States v. Leija-Sanchez, 602 F.3d 797, 799 (7th Cir. 2010) ("[W]e must apply Bowman until the Justices themselves overrule it."); see also United States v. Weingarten, 632 F.3d 60, 66 (2d Cir. 2011) ("[A]lthough we find the available evidence here sufficient to overcome the presumption against extraterritoriality, there is reason to doubt that the presumption against extraterritoriality applies to [18

U.S.C.] § 2423(b) at all."); <u>United States v. Campbell</u>, 798 F. Supp. 2d 293, 304 (D.D.C. 2011).

The reading Defendant urges would undermine the Travel Act's clear proscription on the use of "any facility in interstate or foreign commerce" for unlawful activity, and would defeat Congress's goal of combatting the "complex and interstate nature of large-scale, multiparty crime." 18 U.S.C. § 1952(a); <u>Perrin v. United States</u>, 444 U.S. 37, 41 (1979) (tracing the Travel Act's legislative history). The Travel Act thus permissibly extends to Defendant's alleged wire transfers from Germany to the Channel Islands underlying Counts Seven through Nine. <u>Cf.</u> <u>United States v. Carson</u>, No. 8:09-cr-00077-JVS, Doc. No. 440 (C.D. Cal. Sept. 20, 2011) ("Holding otherwise would mean that Defendants could avoid prosecution simply by making sure any 'corrupt payments' were made from overseas bank accounts.").

In sum, the Government has sufficiently alleged that the conduct underlying Counts Seven through Eleven falls within § 4108's ambit and so constitutes "unlawful conduct" under the Travel Act. Moreover, I am unconvinced that the Travel Act does not apply extraterritorially. I will thus deny Defendant's Motion to dismiss these Counts.

### 4. Conspiracy to Violate the FPCA and Travel Act

Defendant argues that if I dismiss the underlying substantive FCPA and Travel Act Counts, I must also dismiss Count One, charging conspiracy to violate those same Acts. (Doc. No. 72 at 47); 18 U.S.C. § 371. Because the Government has adequately pled the underlying substantive FCPA and Travel Act Counts, I will not dismiss Count One.

### 5. The FCPA and International Money Laundering Counts Do Not Merge

Defendant argues that, insofar as the money laundering Counts (Twelve through Fourteen) are based on the same payments underlying two of the substantive FCPA Counts (Counts Five and Six) and the conspiracy Count (Count One), they merge. (Doc. No. 39 at 5.)

The Government responds that these Counts do not merge because it must prove different facts to convict Defendant under FCPA and the money laundering statute.  (Id. at 3-4.)  It further argues that the merger doctrine does not apply to the promotional money laundering charges as brought in the Superseding Indictment.  (Doc. No. 71 at 3.)  I agree with the Government.

To determine whether charged conduct separately violates two distinct statutory provisions (that consequently do not merge), I must evaluate whether "each provision requires proof of fact which the other one does not."   United States v. Rigas, 605 F.3d 194, 204 (3d Cir. 2010) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)); see also United States v. Conley, 37 F.3d 970, 976 (3d Cir. 1994) ("Evidence which establishes a violation of more than one criminal statute does not necessarily indicate that those statutes proscribe the same offense.") (citations omitted).   Accordingly, I must determine whether the FCPA and the international money laundering statute have the same elements.  See Conley, 37 F.3d at 976 ("The starting point—and the ending point as well—are the essential elements of each of these statutes.").  They do not.

As I have discussed, FCPA requires proof of offer or payment of anything of value to a foreign official for a corrupt purpose.  See 15 U.S.C. § 78dd-2(a)(1), (3).  To prove an international money laundering violation, the Government must prove that the defendant transferred funds abroad from the United States with the intent to promote unlawful activity. See 18 U.S.C. § 1956(a)(2)(A).  That the international money laundering statute requires intent to promote unlawful activity—i.e., intent to promote an FCPA violation—renders the offenses distinct.  See United States v. Paramo, 998 F.2d 1212, 1218 (3d Cir. 1993) (rejecting argument that, as a matter of law, a defendant cannot promote an already completed unlawful activity). Plainly, then, the Government must prove different facts to make out a violation of the money

laundering statute.  Cf. Esquenazi, 752 F.3d at 936 ("Funneling money through shell corporations [in violation of money laundering statute] was not necessary for [Defendant] to bribe a foreign official. It just made it less likely that conduct would be uncovered."); United States v. Malone, 484 F.3d 916, 921 (7th Cir. 2007) ("We have previously held that the promotion element can be met by 'transactions that promote the continued prosperity of the underlying offense,' i.e., that at least some activities that are part and parcel of the underlying offense can be considered to promote the carrying on of the unlawful activity.").

Defendant relies heavily United States v. Santos.  553 U.S. 507 (2008) (plurality opinion), superseded by statute, Fraud Enforcement and Recovery Act, Pub. L. No. 111-21 (2009); (Doc. No. 39 at 12.)  Defendant argues that the Government's characterization of the alleged FCPA bribes as "proceeds" contravenes the plurality holding in Santos that, under the rule of lenity, "proceeds" must mean net profits (rather than gross receipts) in the domestic money laundering context.  553 U.S. at 513.  The plurality suggested that its holding was necessary to ensure that the Government could not charge as a separate crime "a transaction that is a normal part of the crime . . .  to radically increase the sentence for that crime."  Id. at 517. Extrapolating from Santos, Defendant argues that "by charging the allegedly corrupt payment  . . . as 'proceeds' under the money laundering statute, the government has effectively guaranteed that every violation of the FCPA involving payments made by a defendant will also violate the money laundering statute."  (Doc. No. 39 at 7.)

Because the Superseding Indictment does not charge Defendant with laundering criminal "proceeds," however, Defendant's reliance on Santos is inapposite.  Indeed, the Government has deleted all references to "proceeds" in the Superseding Indictment—instead charging Defendant with "intent to promote the carrying on of specified unlawful activity."  18 U.S.C.

§ 1956(a)(2)(A).  The Government's charging strategy comports with case law recognizing that Santos is inapplicable to international promotional money laundering charges.  See United States v. Krasinski, 545 F.3d 546, 550 (7th Cir. 2008) ("The absence of a 'proceeds' requirement in section 1956(a)(2)(A) reflects that Congress decided to prohibit any funds transfer out of the country that promotes the carrying on of certain unlawful activity.") (emphasis added); United States v. Moreland, 622 F.3d 1147, 1167 (9th Cir. 2010) (any error in omitting a profits definition for proceeds was not prejudicial because Government charged § 1956(a)(2)(A), which does not require a showing of proceeds).  Any potential merger problem purportedly arising under Santos is thus moot in light of the Superseding Indictment.

Indeed, even if the Government had failed to allege that Defendant wired money to Official's Sister (as it has alleged in Counts Thirteen and Fourteen), it still would have adequately pled complete FCPA violations and conspiracy (Counts One, Five, and Six).  See 15 U.S.C. § 78dd-2(a) (FCPA violation complete when Defendant merely offers payment in "furtherance of an offer"); Esquenazi, 752 F.3d at 936 ("An 'offer' or a 'promise to pay' a foreign official for a business benefit is just as unlawful as an actual 'payment' under [the FCPA]."); United States v. McDade, 28 F.3d 283, 300 (3d Cir. 1994) ("[A]n indictment under 18 U.S.C. § 371 [the conspiracy statute] need only allege one overt act.").  By alleging payments to Official Sister, however, the Government has additionally pled promotion—namely, that Defendant paid bribes to further his unlawful foreign corruption scheme.  18 U.S.C. § 1956(a)(2)(A); see Conley, 37 F.3d at 979 ("The element charged in the [money laundering] violation, which was not necessary for the offense of conducting an illegal gambling business is that of 'promotion,' i.e., the advancing or furthering of the illegal gambling business."); cf. Rashid v. Warden Philadelphia FDC, 617 F. App'x 221, 224 (3d Cir. 2015) (no merger when the

20

underlying payments are "not essential elements of the completed fraud offenses"); United States v. Yusuf, 536 F.3d 178, 186 (3d Cir. 2008) (adopting Conley's definition of "proceeds" and holding that certain unlawful mailings constituted predicate money laundering offenses because they were, *inter alia*, for the "purpose of executing the scheme and were material to the consummation of the scheme").

The Government has thus charged distinct statutory crimes that do not merge. Accordingly, I will permit it to proceed on Counts Twelve through Fourteen of the Superseding Indictment.

## IV.    Conclusion

The Government has offered detailed factual allegations respecting all its charged counts in the Superseding Indictment.  It has sufficiently alleged substantive FCPA violations—including the date, dollar amount, origination, and terminus of each use of an instrumentality of interstate commerce.  Moreover, Defendant has not shown that the FCPA is unconstitutional (Counts Two through Six).  The Government has also adequately charged five discrete violations of the Travel Act based on Defendant's purported violation of the Pennsylvania commercial bribery statute (Counts Seven through Eleven).  It has also sufficiently charged conspiracy to violate the FCPA and the Travel Act (Count One).  Moreover, it has properly charged international money laundering and conspiracy to commit international money laundering (Counts Twelve through Fourteen).

Finally, Defendant has more than sufficient notice to prepare a defense and to ensure that he will not be tried twice for the same act.  See DeLaurentis, 230 F.3d at 661 (dismissal "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges.).

Accordingly, I will permit the Government to proceed on all Counts of the Superseding Indictment.

**AND NOW,** this 2nd day of March, 2016, upon consideration of the Indictment (Doc. No. 1), the Superseding Indictment (Doc. No. 62), Defendant's Motion to Dismiss Counts One through Eleven (Doc. No. 40), Defendant's Motion to Dismiss Counts Twelve through Fourteen (Doc. No. 39), the Government's Responses in Opposition (Doc. Nos. 71, 72), it is hereby **ORDERED** that:

1. Defendant's Motion to Dismiss Counts One through Eleven is **DENIED**.  (Doc. No. 40.)

2. Defendant's Motion to Dismiss Counts Twelve through Fourteen is **DENIED**. (Doc. No. 39.)

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.
