IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 15-01 |
| DMITRIJ HARDER | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant agreed to participate in a bribery scheme in which he gave a foreign public bank official fifty percent of his consulting fees in exchange for the public official steering new business to the defendant's consulting firm, and thereby yielded millions of dollars in ill-gotten gains. The government asks the Court to consider all of the factors set forth below in fashioning an appropriate sentence.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir.

1

2006); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)).  *See also United States v. Smalley*, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions).  In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision.  *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc).  The failure to properly calculate the advisory guideline range will rarely be harmless error.  *United States v. Langford*, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence.  "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it."  *Cooper*, 437 F.3d at 329.  *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.  **BACKGROUND**

The defendant was the principal owner of Chestnut Consulting Group ("Chestnut"), based in Southampton, Pennsylvania. Presentence Investigation Report ("PSR") ¶¶ 15-16. Between 2008 and 2009, the defendant paid approximately $3,500,000 in bribes to Andrej Ryjenko, an official and senior banker at the European Bank for Reconstruction and Development ("EBRD") in exchange for Ryjenko referring EBRD clients to Chestnut. PSR ¶¶ 15-16, 21-22. The EBRD was a public international organization, and among other things, provided financing for oil and gas operations in Russia and former Soviet republics. PSR ¶¶ 15 n.1, 18. In total, Chestnut was retained on five different transactions overseen by Ryjenko. PSR ¶ 18. The defendant paid the bribes through the Channel Island bank accounts of Ryjenko's sister, Tatjana Sanderson. PSR ¶ 17. These included a $310,121 wire transfer from Chestnut's Third Federal Bank account in Feasterville, Pennsylvania to Sanderson's Citibank account in Jersey, Channel Islands on July 16, 2009 (Count Five), and a $2,478,580.89 wire transfer from Chestnut's Third Federal Bank account to Sanderson's HSBC account in Guernsey, Channel Islands on November 20, 2009 (Count Six). PSR ¶¶ 19-20.

In August 2009, Citibank because concerned about the significant sums being deposited into Sanderson's account and requested documents justifying the deposits, leading the trio to create fake invoices and a fake consulting agreement between Sanderson and Chestnut. PSR ¶ 23. An anonymous tip to EBRD followed, which prompted the City of London Police to launch an investigation. PSR ¶¶ 24-25. During a voluntary interview at JFK airport on February 26, 2010, the defendant falsely stated to the FBI that he did not know Ryjenko and Sanderson were related, and that Sanderson had assisted him in starting a mortgage business for which he paid

3

her only $1 M. PSR ¶ 26.

As a result of this scheme, on June 6, 2017, a British jury sitting in London, United Kingdom, found Ryjenko and Sanderson guilty of numerous corruption charges. On June 20, 2017, Ryjenko was sentenced to 6 years' incarceration. Sanderson was not sentenced because she was deemed mentally unfit to stand trial.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

Counts Five and Six, violations of the Foreign Corrupt Practices Act, each carry a maximum term of 5 years in prison, a three-year period supervised release, a fine of $250,000 or twice the gross gain or loss, and a $100 special assessment.

The total possible maximum sentence is 10 years in prison, a three-year period of supervised release, a fine of $500,000 or four times the gross gain or loss, and a $200 special assessment. Forfeiture of all proceeds from the offense also may be ordered. The defendant specifically has agreed to pay forfeiture in the amount of $1,900,000. Deportation also may result from the plea.

### B. Sentencing Guidelines Calculation.

The parties stipulated in the Plea Agreement to the applicability of the following Sentencing Guidelines: a 3-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

The Probation Office calculated the Guidelines range as follows:

| | |
|---|---|
| Base offense level, § 2C1.1 | 12 |
| More than one bribe, § 2C1.1(b)(1) | +2 |

4

|  |  |
|---|---|
| Value of payments over $3.5M but less than $9.5M, § 2C1.1(b)(2) and § 2B1.1(b)(1)(J) | +18 |
| Adjusted offense level | 32 |
| Acceptance of responsibility, § 3E1.1(a)&(b) | -3 |
| Total offense level | 29 |

PSR ¶¶ 30-42. In light of a Criminal History Category of I, this leads to a Guidelines range of 87-108 months in prison. PSR ¶ 81.

### III. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should consider the calculation of the advisory guidelines as set forth in the Presentence Investigation Report, the plea agreement, review all other factors, and impose an appropriate sentence. The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). As will be discussed later, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).

First, the court must consider the nature of the offense.  The defendant participated in a long-term scheme to bribe a foreign public official in exchange for receiving business advantages, including having the official direct additional business to his consulting firm to the tune of millions of dollars.  He appears to have been motivated entirely by greed.  Indeed, this case is an example of the heartland of foreign corruption prohibited by the FCPA.  These types of offenses seriously undermine the public's confidence in its public institutions and cannot be tolerated.

The Court must also consider the history and characteristics of the offender. The defendant has no criminal history.  PSR ¶¶ 45-49.  He is 45 years old and was born in Kazakhstan, and both of his parents were doctors in the Soviet Union.  PSR ¶¶ 51, 53.  He is a citizen of Germany and a lawful permanent resident of the United States.  PSR ¶ 54.  He has a 19-year-old son from a prior marriage, and is remarried to Sophia Moskalenko, a research psychologist; the couple has three small children, ages 11, 9, and 4.  PSR ¶¶ 56-59. The defendant graduated from college with degrees in economics and engineering, and speaks four languages.  PSR ¶¶ 68-69.  He owned Chestnut from 2005 to 2012 and later invested in three start-up companies.  PSR ¶¶ 71-72. As a result of a lengthy banking career, his marital assets include a five-bedroom home in Huntingdon Valley purchased in 2006 (prior to the offense conduct), a second home in Golden Beach, Florida, two BMWs, and a Lincoln MKT.  In

addition, the defendant has not been employed since 2012 because he has been living off his investments. PSR ¶¶ 60, 73-75, 77. He has some health problems, including Lyme disease and a gluten allergy. PSR ¶¶ 63-65. He reports no substance abuse or mental health problems. PSR ¶¶ 66-67. In sum, there appears to have been no dire personal history or pressing external factors that motivated the defendant's crimes other than avarice.

Additionally, the Court should fashion a sentence that will "reflect the seriousness of the offense and promote respect for the law." 18 U.S.C. § 3553(a)(2). The recommended sentence also should afford adequate deterrence to others who would commit a similar offense, and lead to consistency in sentencing. *Id.* The Court should also take into account avoiding sentencing disparity. *Id.* As previously stated, the defendant's co-conspirator was recently sentenced to six years in British prison.

## IV. FORFEITURE

The defendant agreed in the plea agreement to pay forfeiture in the amount of $1,900,000. To date, no payment has been made.

## V. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court fashion an appropriate sentence, taking into account the Guidelines calculation by the Probation Office, the calculation set forth in the plea agreement, and other factors.

Respectfully submitted,

| | |
|---|---|
| SANDRA MOSER<br>Acting Chief<br>Criminal Division, Fraud Section<br>U.S. Department of Justice | LOUIS D. LAPPEN<br>Acting United States Attorney |
| LEO R. TSAO<br>Assistant Chief, Fraud Section<br>U.S. Department of Justice | _/s/ Richard P. Barrett_<br>RICHARD P. BARRETT<br>Chief, Corruption Unit<br>Assistant United States Attorney |
| | _/s/ Michelle L. Morgan_<br>MICHELLE L. MORGAN<br>Assistant United States Attorney |

## **CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Sentencing Memorandum to be served by electronic filing, and/or first-class mail, addressed to:

Stephen Lacheen, Esq.
1429 Walnut Street
Suite 1301
Philadelphia, PA 19102
slacheen@concentric.net

                                        ___*/s/ Michelle L. Morgan*_____
                              MICHELLE L. MORGAN
                                  Assistant United States Attorney

Dated: July 10, 2017